Stephen L. DINKINS, Plaintiff,

v.

STATE OF OHIO, DIVISION OF STATE HIGHWAY PATROL, Defendant.

No. C85–1806A.

United States District Court, N.D. Ohio, E.D.

May 27, 1987.

Stephen L. Dinkins, pro se.

Edward L. Gilbert, Akron, Ohio, for plaintiff.

William J. Steele, Asst. Atty. Gen., Columbus, Ohio, for defendant.

ORDER

DOWD, District Judge.

The plaintiff, Stephen L. Dinkins, filed a motion to compel discovery on February 19, 1987, requesting the Court to order the defendant, the State of Ohio, Division of State Highway Patrol, to produce the doc-

uments requested in the request for production. The defendant complied with the production request, except that the defendant has refused to produce certain requested material relating to the background investigation the defendant conducted with respect to the plaintiff's employment application. The Court has reviewed the background investigation report *in camera,* and after its review, requested the parties to brief the issue of whether the Court should require the defendant to produce the background investigative reports, and if so, under what conditions.

The plaintiff alleges that the defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, when it rejected his application to become a patrolman with the State Highway Patrol. The plaintiff, a black male, contends that he was qualified for the job, that he applied for the job, and was rejected. The plaintiff contends that any nondiscriminatory reason for the defendant's rejection of his application for highway patrolman is simply pretext for racial discrimination.

The focus of this discovery dispute is the content of the background investigation report compiled by the State Highway Patrol while processing the plaintiff's application. During the background investigation, representatives of the State Highway Patrol contact persons who know the applicant, such as neighbors, employers, acquaintances, and teachers, seeking information about the applicant's fitness to be a highway patrolman. The information compiled during the background information becomes part of the applicant's personnel file, and the defendant uses the information in the background investigation report in its ultimate hiring decision for a particular applicant.

The plaintiff seeks production of the background investigation report because the background investigation report appears to have been the determining factor in the defendant's decision not to hire the plaintiff. The plaintiff passed the written test, the psychological test, and the physical examination; thus it appears that the plaintiff was at least objectively qualified for the position of highway patrolman. Robbie K. Hartsell, the Commander of Training and Recruitment for the State Highway Patrol, testified in deposition that the information contained in the background investigation report was a factor in the decision not to hire plaintiff. Thus, it appears that the information in the background investigation report is relevant either to the issue of the plaintiff's qualifications for the position of highway patrolman, or to the issue of pretext.

The defendant contends that notwithstanding the relevancy of the information contained in the background information report, the report contains information that is confidential in nature. Thus, the defendant objects to the production of the background investigation reports on the basis that the reports are privileged. The defendant raises two arguments in support of its claim of privilege: first, the defendant claims that the reports are confidential law enforcement investigatory records within the meaning of Ohio Revised Code § 149.-43; and second, the defendant contends that the nature of the communications contained in the background investigation report fall within the common law definition of privileged communications.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for extensive discovery of any matter relevant to the subject matter of litigation, as long as the matter is not privileged. The courts have acknowledged that the scope of discovery in Title VII cases is especially broad because evidence of discrimination is often difficult to obtain, and as a result, plaintiffs must often rely on circumstantial and statistical evidence to prove discrimination. *See Rich v. Martin Marietta Corp.,* 522 F.2d 333, 343 (10th Cir.1975). Still, if a matter is privileged, under the federal rules it is not discoverable, despite the broad discovery provisions.

The defendant first argues that the background investigation report is privileged because it is a confidential law enforcement investigatory report as defined in Ohio

Rev. Code § 149.43(A)(2). Section 149.43 describes the availability of public records. Section 149.43(B) provides that all public offices must make available for inspection and copying all public records. Public record is defined in § 149.43(A)(1) as "any record that is kept by any public office ... except ... confidential law enforcement investigatory records...." The statute defines confidential law enforcement investigatory record as follows:

"Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity;

(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

Ohio Rev.Code Ann. § 149.43(A)(2) (Page Supp.1986).

■ The Court has found no Ohio decisions discussing the scope of the term "confidential law enforcement investigatory report." The Court is not convinced, however, that the confidential law enforcement investigatory report exception to the definition of public record extends to investigatory reports compiled by law enforcement agencies to aid them in their employment process. The Court finds that a "law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature" is one that relates directly to the enforcement of the law, and not to employment or personnel matters ancillary to law enforcement matters. *Cf. State ex rel. Cincinnati Post v. Marsh*, 26 Ohio Misc.2d 5, 498 N.E.2d 508 (Ct.C.P.Claremont Co.1985) (holding that survey authorized by city council to aid in council's decision to fire police chief, which related to job performance of police chief, is not public record pursuant to § 149.43). The Court is not persuaded by the defendant's argument that the background investigation report is a confidential law enforcement investigatory record within the meaning of Ohio Revised Code § 149.43.

■ The defendant also argues that the background investigation report is privileged under a common law theory. Under Rule 501 of the Federal Rules of Evidence, federal courts have discretion in fashioning rules of privilege, limited by principles of the common law and the light of reason and experience. *See Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980). The recognition of a privilege, however, impinges on the right of the public to know all the facts surrounding a claim. *Id.* at 50, 100 S.Ct. at 912. As a result, any privilege "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Id.* (quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J. dissenting)). This standard is similar to the one set forth by Professor Wigmore in his treatise; once the Court finds a communication was made in confidence, was essential to the relationship between the parties, and was made in the course of a relationship the public finds important, the Court should recognize a privilege only where "[t]he *injury* that would inure to the relation by the disclosure of the communications [is] *greater than the benefit* thereby gained for the correct disposal of litigation." 8 J. Wig-

more, Evidence § 2285 (J. McNaughton ed. 1961) (emphasis in original).

The Court recognizes that the highway patrol has a strong interest in maintaining the confidentiality of the background investigation report. In order to assess an applicant's aptitude for the job of highway patrolman, the highway patrol seeks candid evaluations from acquaintances of the plaintiff about the plaintiff's personality and character. Without the promise that the statements made about the candidate by the confidential source will remain confidential, the trustworthiness and usefulness of the statements to the highway patrol decreases. Because of the sensitive nature of the duties of a highway patrolman, these candid character and personality assessments are crucial in the patrol's attempt to hire those applicants that will most effectively and responsibly carry out the duties of the highway patrolman. On the other hand, the background investigation report contains information that the defendant admittedly used in forming its decision to reject the plaintiff's application. It appears to the Court that the plaintiff is entitled to some information about the report that the defendant has indicated formed an important part of its decision-making process.

The Court has considerable discretion in resolving discovery disputes. A definite ruling in favor of disclosure of the background investigation report, or in favor of a privilege foreclosing disclosure, will work a hardship on one party or the other. In striking the balance, the court will follow the approach taken by the court in *Zaustinsky v. University of California*, 96 F.R.D. 622 (N.D.Cal.1983), *aff'd*, 782 F.2d 1055 (9th Cir.1985). In *Zaustinsky*, the plaintiff alleged sex discrimination due to the University's failure to grant her tenure as a full professor, and sought discovery of the peer evaluations, which were used in the tenure decision and which the University claimed were privileged.

■ The trial court was faced with the same issue presently before this Court: where a communication satisfies the first three prongs of the Wigmore test, whether the interest in disclosure outweigh the interest in confidentiality. The court ruled that if the plaintiff could demonstrate an ability to prove a *prima facie* case, the defendant must make known its reasons for the promotion decision. If the reasons are based on information the defendant regards as confidential, the defendant must supply the plaintiff with enough information to enable the plaintiff to demonstrate that the reasons are pretextual. The initial disclosure consists of "a written statement of the reasons for [defendant's] decision, including a comprehensive summary in writing of the substance of confidential documents in such records." *Id.* at 625. Any further disclosure depends on the probative value to the plaintiff of the information already disclosed, and would require a more careful balancing of interests by the court. The court concluded that "[t]he procedure outlined should provide reasonable protection to the University's interest in confidentiality while precluding it from unfairly hiding behind that confidentiality in conducting its defense." *Id.* at 626.

■ The Court has reviewed the background investigation report *in camera*, and observes that the defendant has already produced an accurate summary of the information received during the background investigation. Exhibit B to the Defendant's Memorandum in Opposition to Request to Produce Background Investigation of Plaintiff, which is an Inter-office Communication from Sergeant S.M. Stark to Major R.K. Hartsell, contains an accurate synopsis of the negative information about the plaintiff communicated to the patrol by the people it interviewed during the background investigation. A more complete summary is not necessary. A copy of the inter-office communication is attached to this order as Appendix A. The Court finds that the inter-office communication complies with the production contemplated under a *Zaustinsky* procedure.

The Court, however, orders the defendant to supplement the material contained in the inter-office memo by providing a sim-

ilar recitation of the positive information about the plaintiff obtained through the background investigation. Further, the Court orders the defendant to identify the trooper who performed the background investigation and prepared the report, in lieu of disclosing the report itself. In this way the plaintiff may discern whether the interviewing process itself caused bias in the background report.

The Court will seal its copy of the background investigation report, which it viewed *in camera,* and will mark the report as Court's Exhibit 1 for the record.

IT IS SO ORDERED.

APPENDIX A
EXHIBIT B

File No. 00-5-10

**STATE HI〜AY PATROL**
**INTER-OF〜E COMMUNICATION**

Date January 3, 1984

To Major R. K. Hartsell                     Attention

From Sergeant S. A. Stark

Subject Applicant Interview - Stephen Dinkins     Case #222-8287

The above captioned applicant reported to our General
Headquarters as scheduled, at 2:00 p.m., Friday, December 23,
1983.

Lt. Lahman was a witness to the interview.

A copy of the Applicant Information brochure with specific
reference to the background investigation was reviewed. The
Ohio State Highway Patrol Applicant Release (HP-47E) was
also reviewed.

The following information was verbally given as the reasons
the above captioned applicant was not given favorable
consideration for employment.

Physical Health:   Hospitalized January, 1983 for passing
                   blood.

                   High School record indicates over 94
                   days absent - Applicant states he was sick
                   a lot.

Employment History:   Problem with punctuality and absenteeism
                      (Fired).

                      Very limited employment history.

                      Poor college record (Probation and with-
                      drew).

Personal Abilities &
Character:            Described by people who knew him as:

                      1.  Lacking in common sense.

                      2.  Hyper active.

                      3.  Questionable ability to make the type
                          of decisions required of police
                          officers.

                      4.  Informants would not recommend.

     Applicant acted rather odd, remarked several times
     about not drinking enough water, made him sick?  Said
     he had a lot of short term jobs.