[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 141.]

THE STATE EX REL. MULTIMEDIA, INC., D.B.A. WLWT-TV5, *v*. SNOWDEN, CHIEF.

[Cite as *State ex rel. Multimedia, Inc. v. Snowden*, 1995-Ohio-248.]

*Mandamus to compel police chief to permit inspection and copying of all personal background and investigation reports for all members of Cincinnati's police recruit classes—Writ granted except for National Crime Information Center and Regional Crime Information Center "rap sheets."*

(No. 94-2051—Submitted March 21, 1995—Decided May 3, 1995.)

IN MANDAMUS.

———————————

{¶ 1} Respondent, Cincinnati Police Chief Michael Snowden, is responsible for the city's police-recruitment process. As part of this process, the police conduct an investigation of all applicants. The investigation generates the following records: (1) polygraph examination report, (2) National Crime Information Center ("NCIC") and Regional Crime Information Center ("RCIC") "rap sheets," (3) personal history questionnaires, (4) police psychologist report, (5) background investigation report, and (6) credit history. Police applicants are encouraged to be candid and forthcoming about their personal histories during the investigation and are promised confidentiality for the information disclosed by them.

{¶ 2} By letters dated July 1 and July 6, 1994, relator, Multimedia, Inc., d.b.a. WLWT-TV5 ("Multimedia"), demanded that Snowden allow it to inspect and, if necessary, copy all personal background and investigation reports, including criminal and traffic records, for all members of the city's then-current police recruit classes. Following additional correspondence from Multimedia, the city rejected relator's demand on the basis that the requested records are "confidential law enforcement investigatory records" as defined in R.C. 149.43(A)(2).

**{¶ 3}** On September 26, 1994, Multimedia instituted this action under R.C. 149.43(C), seeking a writ of mandamus to compel Snowden to make the requested records available for inspection and copying. We issued an alternative writ, and the parties subsequently filed briefs.

———————————

*Frost & Jacobs* and *Richard M. Goehler*, for relator.

*Fay D. Dupuis*, Cincinnati City Solicitor, and *Karl P. Kadon III*, Deputy City Solicitor, for respondent.

———————————

**Per Curiam.**

**{¶ 4}** Mandamus is the proper remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 88-89. Snowden concedes that the requested records are "records" for purposes of R.C. 149.43 and that they are held by the city's Police Division, which is a "public office." See R.C. 149.011(A) and (G). However, Snowden asserts that the records are excepted from disclosure under R.C. 149.43(A)(2) as "confidential law enforcement investigatory records."

**{¶ 5}** R.C. 149.43(A)(1) excepts confidential law enforcement investigatory records from the definition of "[p]ublic record," and R.C. 149.43(A)(2) defines those records:

"'Confidential law enforcement investigatory record' means *any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature*, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"(a) The identity of *** an information source *** to whom confidentiality has been reasonably promised;

2

"(b) Information provided by an information source *** to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity[.]"  (Emphasis added.)

{¶ 6} Excepting records from release under R.C. 149.43(A)(2) involves a two-step analysis:  (1) Is the record a confidential law enforcement record? and (2) Would release of the record create a high probability of disclosure of any one of the four types of information specified in R.C. 149.43(A)(2)? *State ex rel. Beacon Journal Publishing Co. v. Kent State Univ.* (1993), 68 Ohio St.3d 40, 42, 623 N.E.2d 51, 53.  Snowden argues that the court should construe the phrases "law enforcement matter" and "administrative" broadly, so as to include anything related to the management of a police department.  Nevertheless, in considering Snowden's suggested interpretation of R.C. 149.43(A)(2), exceptions to disclosure must be strictly construed against the custodian of the public records, and the burden to establish an exception is on the custodian. *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 169, 637 N.E.2d 911, 912.  Further, R.C. 149.43 should be construed to further broad access, and any doubt should be resolved in favor of disclosure of public records. *State ex rel. The Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 621, 640 N.E.2d 174, 177; cf. *State ex rel. Steckman*, *supra*.

{¶ 7} Personnel records of police officers reflecting the discipline of police officers are not confidential law enforcement investigatory records excepted from disclosure under R.C. 149.43(A)(2):

"The limited record before this court strongly suggests that most, if not all, of the records at issue herein are not law enforcement investigatory records as contemplated by the statute.  Instead, it is apparent that the records involve the city's monitoring and discipline of its police officers.  These internal investigations were not undertaken based upon a specific suspicion of criminal wrongdoing. They were routinely conducted in every incident where deadly force was used by a police

officer. *** [P]ersonnel records reflecting the discipline of police officers are required to be disclosed pursuant to R.C. 149.43. ***" *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 83, 526   N.E.2d 786, 790 ("NBC I"); see, also, *Toledo Police Patrolmen's Assn., Local 10, IUPA v. Toledo* (1994), 94 Ohio App.3d 734, 739, 641 N.E.2d 799, 802; cf. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1991), 57 Ohio St.3d 77, 566 N.E.2d 146 (records involving police use of deadly force resembled investigatory records rather than mere police personnel records).

{¶ 8} As in *NBC I*, the investigations undertaken by the Cincinnati Police Division were not based on any suspicion of wrongdoing.  Instead, the investigations appear to have been routinely conducted on every applicant and were part of the personnel records of each police recruit.  In other words, public employee personnel records are generally regarded as public records, absent proof of an exception.  See *Fant v. Greater Cleveland Regional Transit Auth.* (June 9, 1994), Cuyahoga App. No. 66415, unreported.

{¶ 9} More pertinently, it has been held that the phrase "law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature" refers "directly to the enforcement of the law, and not to employment or personnel matters ancillary to law enforcement matters.'" *State ex rel. Lorain Journal Co. v. Lorain* (1993), 87 Ohio App.3d 112, 115, 621 N.E.2d 894, 896, citing *Dinkins v. Ohio Div. of Hwy. Patrol* (N.D.Ohio 1987), 116 F.R.D. 270.  Investigatory reports compiled by law enforcement agencies to assist employment decisions do not constitute confidential law enforcement investigatory records excepted from disclosure under R.C. 149.43, since they do not directly involve law enforcement.  See *State ex rel. Lorain Journal* (results of polygraph examinations administered to applicants for employment with municipal police department) and *Dinkins* (prehire background investigation report for applicant for Ohio State Highway Patrol).  The foregoing interpretation of R.C.

4

149.43(A)(2) comports with our duty to strictly construe confidential law enforcement investigatory records and resolve any doubts in favor of disclosure.

{¶ 10} Snowden contends that not excepting the subject records as confidential law enforcement investigatory records will result in police applicants' not being as forthcoming and candid in the recruitment process. We have rejected similar contentions by holding that "'in enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure.'" *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 249, 643 N.E.2d 126, 130, quoting *State ex rel. James*, *supra*, 70 Ohio St.3d at 172, 637 N.E.2d at 913-914. Thus, Snowden's public policy arguments to the contrary are of no avail.

{¶ 11} Snowden next asserts that the release of records containing information derived from computerized criminal databases like NCIC and RCIC is prohibited. As relator concedes, NCIC and RCIC "rap sheets" generated in the investigation of police applicants are prohibited from being released by state and federal law. R.C. 149.43(A)(1); R.C. 109.57; Ohio Adm. Code 4501:2-10-06(B); Section 3789g, Title 42, U.S.Code; 28 C.F.R. Section 20.33(a)(3); *State ex rel. Natl. Broadcasting co. v. Cleveland* (1992), 82 Ohio App.3d 202, 206-207, 611 N.E.2d 838, 840-841; *Ingraham v. Ribar* (1992), 80 Ohio App.3d 29, 33-34, 608 N.E.2d 815, 818; 1994 Ohio Atty Gen.Ops. No. 94-046.

{¶ 12} Snowden finally contends that a psychological examination resulting from the referral of an applicant to a police psychologist for evaluation need not be released because it is an R.C. 149.43(A)(3) "medical record" excepted from disclosure. R.C. 149.43(A)(3) defines "[m]edical record" as "any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis,

or medical condition of a patient and that is generated and maintained in the process of medical treatment." Although psychologists are not licensed physicians, see, *e.g.*, *State ex rel. McMaster v. School Emp. Retirement Sys.* (1994), 69 Ohio St.3d 130, 136, 630 N.E.2d 701, 706-707, R.C. 149.43(A)(3) does not restrict medical records to those documented by licensed physicians. Further, the word "medical" refers to the "science and art of the investigation, prevention, cure, and alleviation of disease," Black's Law Dictionary (6 Ed.1990) 982, which would arguably include reports of psychologists.

{¶ 13} Nevertheless, in *State ex rel. Toledo Blade Co. v. Telb* (C.P.1990), 50 Ohio Misc.2d 1, 10, 552 N.E.2d 243, 251, the court held that documents containing opinions of psychologists sought by a sheriff to assist him in making a decision as to an employee's suitability for continued employment were not medical records excepted from disclosure under R.C. 149.43:

"To fall within this exception, a record must pertain to a medical diagnosis *and* be generated and maintained in the process of medical treatment. The respondents' argument fails because they do not meet the conjunctive requirements of the statute, in that the records were not maintained in the process of medical treatment. Rather, the documents themselves make clear that, in each case, the report of the psychologist was sought as part of the sheriff's decision-making process regarding Zieroff's employment. They were not sought in the process of medical treatment." (Emphasis *sic*.)

{¶ 14} Analogously, the police psychologist report in this case was not obtained in the process of the applicant's medical treatment. Instead, it was garnered to assist in the police-hiring process. Therefore, the psychological report that is part of the requested records is not a medical record that is excepted from disclosure.

6

**{¶ 15}** Multimedia is thus entitled to a writ of mandamus compelling the disclosure of all of the requested records except for the NCIC and RCIC "rap sheets." Multimedia's request for an *in camera* review is moot.

**{¶ 16}** Multimedia also requests attorney fees. An award of attorney fees under R.C. 149.43(C) is not mandatory. *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. Multimedia must demonstrate a sufficient benefit to the public to warrant an award of attorney fees, and the court may also consider the reasonableness of Snowden's refusal to comply, since an award of attorney fees is punitive. State ex rel. *The Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 626, 640 N.E.2d 174, 180. Multimedia has demonstrated a sufficient public benefit. Further, Snowden failed to comply with the records request based on reasons that have been found to have been meritless. Additionally, although one of Snowden's claimed exceptions possesses merit, Multimedia had informed him by letter dated August 22, 1994, that information from the NCIC could be redacted prior to disclosure of the remaining requested records. Consequently, Multimedia is entitled to an award of attorney fees.

**{¶ 17}** Accordingly, we grant a writ of mandamus compelling Chief Snowden to release all of the records requested except for the NCIC and RCIC "rap sheets," grant Multimedia's request for attorney fees, and deny Multimedia's request for an *in camera* review.

*Writ granted.*

MOYER, C.J., WRIGHT, PFEIFER and COOK, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur separately.

———————————

**DOUGLAS, J., concurring.**

{¶ 18} I concur with the judgment of the majority which orders release of the records in question and allows an award of attorney fees. I write separately to make three points.

I

{¶ 19} I continue to believe that the discussion in the majority opinion which supports the attorney fees award is inaccurate. Multimedia (or any other successful plaintiff-relator) need *not* demonstrate a benefit to the public to warrant an award of attorney fees. Implicit in gaining release of public records, to which access has been denied, is that the public has benefited by release of records that already belong to the public. Further, R.C. 149.43(C) specifically contemplates an award of attorney fees. In pertinent part, the statute states that "* * * if a person, who has requested a copy of a public record allegedly is aggrieved by the failure of a person responsible for it to make a copy available to him in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit or the person responsible for the public record to comply with division (B) of this section *and that awards reasonable attorney's fees to the person that instituted the mandamus action*." (Emphasis added.) The word "may" *does not* modify the verbiage regarding attorney fees. The word "may" *does* modify the commencing of a mandamus action.

{¶ 20} On this same issue, in *State ex rel. The Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 640 N.E.2d 174, Justices Resnick, F.E. Sweeney and I wrote, while concurring in part and dissenting in part, that the amorphous test of "public benefit" was not and is not the test to be used for the awarding of attorney fees to a successful litigant. What we said there bears repeating here:

"Finally, I continue to disagree with the proposition, as set forth in the majority opinion, that a '[r]elator must demonstrate a sufficient benefit to the public

to warrant an award of attorney fees * * *.'  The statute does not require this and the amending process engaged in by the General Assembly clearly makes this point. Regarding this issue, I believe that the information set forth in my dissenting opinion in *State ex rel. Fox v. Cuyahoga Cty. Hosp.* (1988), 39 Ohio St.3d 108, 112-114, 529 N.E.2d 443, 447-448, is instructive.  Therein, it was stated:

"'With regard to the holding of the majority in denying reasonable attorney fees to relators, I respectfully dissent.

"'Given the specific language of the statute and the legislative history of the public records legislation, it is difficult for me to understand how the majority can reach its conclusion.  The theory of any public disclosure law is not that an individual is benefited but that the public as a whole is the beneficiary of the government's business being open to the public.  When a "public office" refuses a legitimate and reasonable request to make available, pursuant to R.C. 149.43, public records, some individual or organization must be the catalyst to enforce the law.  If we, as we are doing today, prevent the recovery of reasonable attorney fees for those who seek to enforce the law on behalf of all of us, then truly those self-appointed surrogates will be "volunteers" in every sense of the word and will find themselves burdened with heavy expenses which they must personally underwrite. There will be little incentive, except possibly for news-gathering organizations, to seek enforcement of the law which, in effect, defeats the very purpose of the law.

"'The General Assembly obviously realized this problem when it enacted, effective October 15, 1987, a new subdivision (C) to R.C. 149.43.  In doing so, the General Assembly repealed R.C. 149.99, which had provided the penalty for violation of R.C. 149.43.  As set forth in fn. 2 of the majority opinion, the now repealed penalty was that an aggrieved person "may recover a forfeiture of one thousand dollars and reasonable attorneys fees for each violation."

"'Arguably, the use of the word "may" by the legislature could be construed to make any award by a court, for violation of the law, discretionary.  So what did

the General Assembly do when confronted with this problem?  It repealed R.C. 149.99 and enacted R.C. 149.43(C), which provides (in part) in no uncertain terms that a "* * * person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit * * * responsible for the public record to comply with division (B) of this section and *that awards reasonable attorney's fees* to the person that instituted the mandamus action."  (Emphasis added.)

"'In reviewing this language the majority says, "[t]his provision does not appear to require the award of attorney fees but makes such an award discretionary."  The majority misses the mark.  The word "may" in this newly revised section does not modify the reasonable-attorney-fees language.  The word "may" only modifies the verbiage "commence a mandamus action."  It was placed in the statute so there could be no further question that an allegedly aggrieved party could use the speedy remedy of mandamus, a course of action which had been prevented by a majority of this court in *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1987), 32 Ohio St.3d 327, 512 N.E.2d 1176.  An allegedly aggrieved party can still file a civil action in the common pleas court to compel compliance with R.C. 149.43 but now *may* also use mandamus as a vehicle to bring about compliance.

"'To support its decision regarding attorney fees, the majority cites Black's Law Dictionary and several cases, all of which involve something other than the Public Records Law.  Further, in doing so, the majority ignores the explicit language of the Act and, in addition, ignores or overlooks the very precise language found in Section 5 of Am.Sub.S.B. No. 275, effective October 15, 1987, which provides:

"'"This act is hereby declared to be an emergency measure necessary for immediate preservation of the public peace, health, and safety.  The reason for the necessity is that, unless the effect of the recent decision of the Ohio Supreme Court

10

in *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1987), 32 Ohio St.3d 323 [sic 327] [512 N.E.2d 1176] is immediately superseded and a civil action for a writ of mandamus available in all courts with original jurisdiction reestablished as the remedy to enforce the Public Records Law, *members of the general public could be denied access to public records in violation of the Public Records Law, and have no recourse other than to pursue an inadequate, statutorily prescribed remedy in the court of common pleas of injunctive relief, a forfeiture of $1,000, and a reasonable attorney's fees award. Therefore, this action shall go into immediate effect*." (Emphasis added.)

"'Accordingly, since the majority ignores the specific language and intent of the General Assembly, ignores the legislative history, frustrates the purpose of the Act and leaves aggrieved parties without a practical remedy, I must dissent from that portion of the majority opinion which denies relators their *reasonable* counsel fees.

"'By today's decision, the majority leaves an offending governmental unit with no reason to comply with the Act. Any such unit will be defended at the taxpayers' expense since its attorney fees will be paid out of government funds. If the "public office" loses and is not required to pay costs and reasonable attorney fees, then no penalty at all attaches since the General Assembly has repealed R.C. 149.99. Can the majority really believe it is following the will of the legislative branch of government?'

"This case is a perfect example of why the General Assembly provides for the awarding of attorney fees. With regard to this now four-year delay in producing records requested by relator, the majority finds that '[a] more reasonable inference from the evidence is that the hours were reduced and "a fictional division" created *to retaliate for relator's records request and unfavorable press coverage concerning the Warren Police Department*.' (Emphasis added.) Such a finding, while not needed to award attorney fees under the statute, certainly militates for

such an award.  I applaud the majority for seeing its way clear to make such an award in this case.  The majority should have done so, however, based upon the dictates of the law rather than on the basis of some amorphous, subjective weighing process that requires a case-by-case determination by whoever happens, at any particular moment, to be sitting in judgment." *Id.* at 628-630, 640 N.E.2d 182-183.

{¶ 21} Accordingly, relator is entitled to an award of attorney fees and I enthusiastically concur with the majority in so finding.  The only way to effectively enforce the Public Records Law is to make noncompliance hurt.  The General Assembly has provided such a remedy.  We should enforce their wisdom and will.

II

{¶ 22} This complaint for a writ of mandamus was filed in this court on September 26, 1994.  It is now May 1995.  Given that we are issuing one of the great writs, it would seem that greater speed should be our guide -- especially when the public information being sought is necessary for the public's need to know on a timely basis.

III

{¶ 23} On September 7, 1994, this court decided *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83.  In that case, the court took great pains to spell out how limited the exceptions to R.C. 149.43 really are.  We said that offense and incident reports (and we meant whether "routine" or not) are subject to immediate release upon request.  We made clear that *Steckman* applied only in pending criminal cases and could not and should not be used to attempt to thwart the release of public records which have no direct current connection with the prosecution of a criminal matter.  It is interesting to note that what criticism *Steckman* has received has not been on the law of the case but only on what those criticizing would like the law, for their purpose, to be.  Some of us might even agree with a different philosophical position, but our job is to follow and interpret what the law says.

**{¶ 24}** While the respondent herein does not cite (and properly so) *Steckman* as his reason for refusing relator's request for public records, he and his counsel should certainly be aware of the case. Even a cursory reading of *Steckman* as applied to the facts of the case now before us has to lead to the inescapable conclusion that the records sought by relator should have been released to relator long ago. Since the records have not been released, the granting of the requested writ and attorney fees is entirely appropriate.

IV

**{¶ 25}** Accordingly, I concur with the judgment of the majority, but express reservations concerning some of the reasoning set forth in the majority opinion.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing opinion.

_____