THE STATE EX REL. THE PLAIN DEALER PUBLISHING
COMPANY *v.* CITY OF CLEVELAND.

[Cite as *State ex rel. The Plain Dealer Publishing
Co. v. Cleveland* (1996), 75 Ohio St.3d 31.]

(No. 95–594—Submitted October 10, 1995—Decided March 4, 1996.)

*Baker & Hostetler, David L. Marburger, Michael K. Farrell* and *Elizabeth A. McNellie,* for relator.

*Sharon Sobol Jordan,* Cleveland Director of Law, *Stephen J. Terry,* Chief Counsel, and *Kathleen A. Martin,* Chief Trial Counsel, for respondent.

*John E. Gotherman,* urging denial of the writ for *amici curiae.*

---

*Per Curiam.* Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 89. There is no dispute that the requested resumes are "records" for purposes of R.C. 149.43 and that they are subject to R.C. 149.43 because Lamalie and the committees acted for a public purpose in seeking and collecting the resumes. See, *e.g., State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 263, 602 N.E.2d 1159, 1163.' Instead, the city and *amici* contend that the release of resumes is prohibited by the constitutional right of privacy and the doctrine of separation of powers. Relator initially contends that the city has waived its right to assert these exceptions because it failed to plead them as affirmative defenses in its answer.

Civ.R. 8(C) provides that "[i]n pleading to a preceding pleading, a party shall set forth * * * any * * * matter constituting an avoidance or affirmative defense." An affirmative defense is waived under Civ.R. 12(H), unless it is presented by motion before pleading pursuant to Civ.R. 12(B), affirmatively in a responsive pleading under Civ.R. 8(C), or by amendment under Civ.R. 15. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 4, 12 OBR 1, 4, 465 N.E.2d 377, 380.

In the city's answer, it generally denied that the resumes are public records and specified that "confidentiality is necessary to identify and hire the best qualified candidate for the office of Chief of Police." However, the city did not specify the exceptions it now claims, nor did it seek amendment of its answer to include these exceptions.

An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it. See *Davis v. Cincinnati, Inc.* (1991), 81 Ohio App.3d 116, 119, 610 N.E.2d 496, 498; Black's Law Dictionary (6 Ed.1990) 60. "An affirmative defense is any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the 'confession') but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the 'avoidance')." (Footnote omitted.) 1 Klein, Browne & Murtaugh, Baldwin's Ohio Civil Practice (1988) 33, T 13.03.

Exceptions to disclosure under R.C. 149.43 are not in the nature of a confession and avoidance because the assertion of an exception does not admit the allega-

tions of an R.C. 149.43(C) mandamus action, *i.e.*, it does not concede that the requested records are "public records." This is consistent with federal courts' interpretation of exemptions to the federal Freedom of Information Act ("FOIA"), according courts discretion to consider exemption claims which are not raised in a timely manner. 1 O'Reilly, Federal Information Disclosure (2 Ed.1990) 8–31, Section 8.11; see, also, *Kay v. Fed. Communications Comm.* (D.D.C.1994), 867 F.Supp. 11, 21–22; but, see, *Detroit News, Inc. v. Detroit* (1990), 185 Mich.App. 296, 300, 460 N.W.2d 312, 314 ("Exemptions are affirmative defenses to requests for documents" under the Michigan Freedom of Information Act.). Based on the foregoing, exceptions to disclosure under R.C. 149.43 are not affirmative defenses, and the city's failure to raise the exceptions it now relies on does not prohibit the court from considering them.

As to the merits of the city's claimed exceptions, any exceptions to disclosure are strictly construed against the custodian of public records, and the burden to establish an exception is on the custodian. *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 169, 637 N.E.2d 911, 912. R.C. 149.43 is liberally construed to further broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. The Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 621, 640 N.E.2d 174, 177.

The city and *amici* initially contend that the constitutional right of privacy prevents disclosure of the police chief resumes. The right of privacy involves the interest of avoiding disclosure of personal matters and independence in making certain kinds of important decisions. *Whalen v. Roe* (1977), 429 U.S. 589, 598–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73. In a due process and equal protection context, the right to privacy relates to certain rights of freedom of choice in marital, sexual, and reproductive matters. See, generally, 3 Rotunda & Nowak, Treatise on Constitutional Law (2 Ed.1992) 298–299, Section 18.26. Resumes do not seem to be encompassed in this limited constitutional right of privacy.

Nevertheless, Cleveland and *amici* rely on *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 640 N.E.2d 164, where the court held that, under the circumstances of the case, federal constitutional privacy rights forbid disclosure of Social Security numbers ("SSNs") under R.C. 149.43. *Beacon Journal Publishing* was subsequently distinguished in *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 248, 643 N.E.2d 126, 129, where the court held:

"Although this court engaged in weighing interests benefited by disclosure against privacy interests, we emphasized that '[d]ue to the federal legislative scheme involving the use of SSNs, city employees have a legitimate expectation of privacy in their SSNs.' [*Beacon Journal Publishing Co., supra*] 70 Ohio St.3d at 609, 640 N.E.2d at 167. There is no similar legislative scheme protecting the

names and work addresses of public employees in general or animal research scientists in particular. Additionally, although there is evidence of an increase in reported incidents of threats, harassment, and violence against animal research scientists, there does not appear to be the same 'high potential for * * * victimization' found by the court to be apparent from the disclosure of SSNs. *Id.* at 612, 640 N.E.2d at 169. Therefore, respondents' assertion that the constitutional right to privacy excepts names and work addresses from disclosure under R.C. 149.43 is without merit."

Similarly, in the case at bar, unlike *Beacon Journal Publishing Co.,* there is no legislative scheme protecting resumes of applicants for public employment similar to the statutes protecting SSNs, and the city has not established the same high potential for victimization that could result from disclosure of resumes that the court found in *Beacon Journal Publishing Co.* as to SSNs. Therefore, as in *Thomas,* the city's assertion that the constitutional right to privacy excepts resumes of applicants seeking public employment from disclosure under R.C. 149.43 is without merit.

This result comports with *State ex rel. Beacon Journal Publishing Co. v. Akron Metro. Hous. Auth.* (Apr. 13, 1988), Summit App. No. CA 13575, unreported, 1988 WL 38067, affirmed as to denial of attorney fees (1989), 42 Ohio St.3d 1, 535 N.E.2d 1366 (court of appeals holding that applications and resumes of candidates for the executive director's position of a city housing authority constituted public records which did not fall within any of the exceptions enumerated in R.C. 149.43[A][1] ), *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 647 N.E.2d 1374 (writ of mandamus granted to compel release of personal background and investigation reports for police recruits, except for "rap sheets"), and *Toledo Blade Co., supra* (federal and state common-law privacy rights do not prohibit disclosure of donor names). See, also, *Forum Publishing Co. v. Fargo* (N.D.1986), 391 N.W.2d 169 (applications and supporting documents submitted to consulting firm under contract to city to assist in hiring police chief disclosable under state open records law).

In addition, even in jurisdictions which have substantially incorporated the "clearly unwarranted invasion of personal privacy [exemption]" contained in FOIA or which specify a right to privacy in their state court constitutions, courts have generally permitted disclosure under their state public records acts of records similar to those requested by relator in the instant case. Annotation, What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption under State Freedom of Information Act (1983), 26 A.L.R.4th 666, 671, Section 2[a] ("[C]ourts have held that various types of * * * personnel records, job applications, and other job-related information * * * were not exempt from public disclosure, under the applicable freedom of information act,

as personal matters, the disclosure of which would constitute an invasion of personal privacy.") and 675–681, Section 4; *Dubuque v. Telegraph Herald, Inc.* (Iowa 1980), 297 N.W.2d 523 (disclosure pursuant to state public records law of names and other information about applicants for position of city manager who had requested confidentiality was not excepted under privacy exemption); *Gannett River States Publishing v. Hussey* (La.App.1990), 557 So.2d 1154 (state constitutional right to privacy does not prevent disclosure under state public records law of records relating to mayor's selection of fire chief); *Kenai v. Kenai Peninsula Newspapers* (Alaska 1982), 642 P.2d 1316; but, see, *Core v. United States Postal Serv.* (C.A.4, 1984), 730 F.2d 946; *Booth Newspapers, Inc. v. Univ. of Michigan Bd. of Regents* (1992), 192 Mich.App. 574, 481 N.W.2d 778.

As to the city's contentions that permanent confidentiality of police chief applicants is necessary to identify and hire the most qualified candidate for police chief and that unsuccessful candidates would be harmed by disclosure of their resumes, the court has consistently rejected similar policy arguments as matters resolved by the General Assembly's enumeration of very narrow, specific exceptions to R.C. 149.43. *Multimedia, supra,* 72 Ohio St.3d at 143–144, 647 N.E.2d at 1378; *Thomas, supra,* 71 Ohio St.3d at 249, 643 N.E.2d at 130; *James, supra,* 70 Ohio St.3d at 172, 637 N.E.2d at 913–914.

Finally, despite Cleveland and *amici*'s contentions to the contrary, it is not evident that disclosure of resumes of applicants for public offices like police chief necessarily prevents the best qualified candidates from applying. For example, most positions in the Cleveland Police Department (not including the police chief) and all positions, including the fire chief, in the Cleveland Fire Department are filled by hiring or promoting candidates from eligibility lists which are open to public inspection. Cleveland Director of Public Safety William Denihan testified that the public availability of eligibility lists has not impeded the city's ability to get the best people for the positions to be filled. Further, as noted by the Alaska Supreme Court in *Kenai, supra,* 642 P.2d at 1324:

"Public officials such as * * * Chiefs of Police have substantial discretionary authority. The qualifications of the occupants of such offices are of legitimate public concern. Disclosing the names and applications of applicants allows interested members of the public, such as the newspapers here, to verify the accuracy of the representations made by the applicants and to seek additional information which may be relevant to the selection process.

"The applicants' claim that revealing the names and applications of office seekers will narrow the field of applicants and ultimately prejudice the interests of good government is not sufficiently compelling to overcome the public's interest in disclosure. * * * It is not intuitively obvious that most well qualified

potential applicants for positions of authority in municipal governments will be deterred from applying by a public selection process * * *.

"The applicants' individual privacy interests in having their names and applications not revealed are also not of an order sufficient to overcome the public's interest. The applicants are seeking high government positions. 'Public officials must recognize their official capacities often expose their private lives to public scrutiny.' Further, the information sought is that which has been voluntarily provided by the applicants to the municipalities. It is unlikely to be particularly embarrassing if publicly revealed." (Footnotes omitted.)

For the foregoing reasons, neither the constitutional right to privacy nor any related policy considerations excepts the resumes from disclosure under R.C. 149.43.

Cleveland's remaining contention is that the resumes are excepted from disclosure under R.C. 149.43(A)(1) because of the constitutional separation of powers doctrine. The United States Constitution does not impose the doctrine of separation of powers on the states. *Mayor of Philadelphia v. Educational Equality League* (1974), 415 U.S. 605, 615, 94 S.Ct. 1323, 1330, 39 L.Ed.2d 630, 641, fn. 13. Although Ohio does not have a constitutional provision expressly stating the concept of separation of powers, "this doctrine is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 158–159, 28 OBR 250, 251, 503 N.E.2d 136, 138; *State v. Warner* (1990), 55 Ohio St.3d 31, 43–44, 564 N.E.2d 18, 31. The state constitutional legislative power is vested in the General Assembly. Section 1, Article II, Ohio Constitution.

The city contends that the General Assembly's enactment of R.C. 149.43 violates the separation of powers doctrine by infringing on the mayor's executive authority to appoint the police chief under Sections 67 and 116 of the Cleveland charter. However, there is generally no violation of a state's constitutional separation of powers doctrine by an action applied to local government officials. *Locke v. Hawkes* (Fla.1992), 595 So.2d 32, 36 ("[O]ur separation of powers provision was not intended to apply to local governmental entities and officials * * *."); *Ghent v. Zoning Comm. of Waterbury* (1991), 220 Conn. 584, 587, 600 A.2d 1010, 1012 ("The constitutional provision [concerning separation of powers] applies to the state and not to municipalities, which are governed by charters and other statutes enacted by the legislature."); *Hubby v. Carpenter* (1986), 177 W.Va. 78, 83, 350 S.E.2d 706, 710 ("[T]he general rule [is] that the [state] separation of powers doctrine applies to state government and state officers and ordinarily does not extend to the government of municipal corporations."); see,

generally, *Ball v. Fitzpatrick* (Miss.1992), 602 So.2d 873, 878–879 (Banks, J., concurring), and cases cited therein.

Under Section 1, Article III of the Ohio Constitution, the executive department of the state includes only the Governor, Lieutenant Governor, Secretary of State, State Auditor, State Treasurer, and Attorney General. Since the mayor of Cleveland is not part of the executive branch of state government, the General Assembly's enactment of R.C. 149.43 does not violate the separation of powers doctrine. Cleveland relies on *State ex rel. Steffen v. Kraft* (1993), 67 Ohio St.3d 439, 440, 619 N.E.2d 688, 689, where the court noted that "if R.C. 149.43 were interpreted to mandate public access to a trial judge's personal notes, that result could be construed as an unconstitutional legislative encroachment upon the independence of the judiciary." However, *Steffen* is inapposite because any arguable conflict avoided by this court's construction of R.C. 149.43 in that case involved *coordinate branches of state government,* i.e., the General Assembly and the state judiciary, which includes the courts specified in Section 1, Article IV, Ohio Constitution.

In addition, even assuming, *arguendo,* that the separation of powers doctrine is applicable to a mayor's executive powers, the doctrine applies only when there is some interference with another governmental branch. *Sadler v. Oregon State Bar* (1976), 275 Ore. 279, 285–286, 550 P.2d 1218, 1222. For the reasons stated in considering the city's policy contentions, R.C. 149.43 does not unconstitutionally interfere with the mayor's ability to select the best qualified candidate.

Accordingly, the city and *amici*'s claimed exceptions are meritless, and we grant a writ of mandamus compelling the city to make the requested resumes available to relator for inspection and/or copying.

Relator also requests attorney fees. An award of attorney fees is not mandatory, but will be granted where a sufficient benefit to the public is demonstrated. *Multimedia, supra,* 72 Ohio St.3d at 145, 647 N.E.2d at 1379; *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. Relator has established a sufficient public benefit, and Cleveland has failed to comply with its records request for reasons that are invalid. Therefore, relator is entitled to attorney fees. Relator's counsel is instructed to submit a bill and documentation in support of its request, in accordance with the guidelines set forth in DR 2–106. *State ex rel. Police Officers for Equal Rights v. Lashutka* (1995), 72 Ohio St.3d 185, 188, 648 N.E.2d 808, 810.

*Writ granted.*

WRIGHT and COOK, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur separately.

RESNICK and PFEIFER, JJ., concur separately.

MOYER, C.J., and PFEIFER, J., concur in part and dissent in part.

DOUGLAS, J., concurring. I concur with the majority in the granting of a writ and the allowance of attorney fees.

While the majority has reached the right conclusion regarding the award of attorney fees, the majority does so, once again, with the wrong reasoning. I would grant attorney fees for the reasons expressed in the well-reasoned dissent of Justice Sweeney in *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d 1049, and for the reasons I have expressed in both concurrences and dissents in a number of these public record cases. Unless and until we decide that attorney fees are mandatory (thereby following the statute), this "cottage industry" of public record litigation will continue unabated, since there is no mandatory penalty for custodians of public records refusing to release such records.

It is encouraging that there now appear to be three solid votes on this court to enforce the law as written. When we finally do so, we will, I believe, see a drastic reduction of the number of open records cases coming before this and other courts. Much of the game of avoidance and delay will disappear and public records will become available upon request—not years later, if ever.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing concurring opinion.

ALICE ROBIE RESNICK, J., concurring. While I concur in the judgment reached by the majority granting the writ of mandamus, I write separately to stress the need for a specific exemption that protects an individual government employee's right to privacy.

The majority correctly holds that Ohio's Public Records Act, R.C. 149.43, mandates the disclosure of the resumes submitted by applicants for the position of Cleveland Police Chief. However, because of the growing number of cases before this court that involve the balance between an individual government employee's right to privacy and the public's right to know, I am concerned that the General Assembly has not specifically provided a general exception for privacy. As the majority points out, resumes are not protected by a limited constitutional right of privacy, nor is there a special state or federal legislative scheme protecting resumes. Therefore, if there is to be an exemption for resumes and other general privacy concerns, the General Assembly must establish such an exemption. *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 248, 643 N.E.2d 126, 129; *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 615–616, 640 N.E.2d 164, 172 (Douglas, J., dissenting); *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 266, 602 N.E.2d 1159, 1164–1165.

Other states and the federal government have fashioned such an exemption in their open records laws. See, *e.g.*, Section 552(b)(6), Title 5, U.S.Code (The public information statute "does not apply to matters that are * * * personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy * * *."); Cal.Gov.Code 6254(c) (exemption from disclosure of "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy"); 5 Ill.Comp.Stat.Ann. 140/7(1)(b) ("Information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy" is exempt from inspection and copying.); Ky.Rev.Stat.Ann. 61.878(1)(a) (excludes from disclosure "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy"); Mich.Comp.Laws Ann., Chapter 15.243(1) ("A public body may exempt from disclosure as a public record under this act: (a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy."); N.Y.Public Officers Law 87(2)(b) (A public agency may deny access to records or portions thereof that "if disclosed would constitute an unwarranted invasion of personal privacy * * *."); 65 Penn.Stat.Ann. 66.1(2) (The term "public record" shall not mean "any report, communication or other paper, the publication of which * * * would operate to the prejudice or impairment of a person's reputation or personal security * * *."). These statutes allow for the balancing of the privacy interests of the individual government employee against the public's right to know.

In applying these privacy exemptions to requests for information concerning candidates for public employment, selected state supreme courts have held that the considerable privacy interests of the candidates in maintaining secret their identities outweigh the public's right to know. See, *e.g., Booth Newspapers v. Univ. of Michigan* (1993), 444 Mich. 211, 233, 507 N.W.2d 422, 432 (Identity of candidates may in fact be personal, however, the disclosure of regents' travel expense reports created in candidate search procedure could only " *'conceivably'* lead to the revelation of personal information" and thus is not exempt from disclosure. [Emphasis *sic.*]); *Young v. Rice* (1992), 308 Ark. 593, 598, 826 S.W.2d 252, 255 (Substantial privacy interest exists in candidates' identities because the release of such information "could subject the candidates to embarrassment and could perhaps threaten their future employment."); *Atty. Gen. v. School Commt. of Northampton* (1978), 375 Mass. 127, 132, 375 N.E.2d 1188, 1191 (Candidates' identities are exempt from disclosure if proven to be invasions of personal privacy.). See, also, *Core v. United States Postal Serv.* (C.A.4, 1984), 730 F.2d 946, 948 (Because the identity of candidates had already been revealed, "disclosure that they wished to leave their former employment cannot embarrass them * * *."); *Dubuque v. Telegraph Herald, Inc.* (Iowa 1980), 297 N.W.2d 523,

528 (No evidence was introduced to show disclosure would substantially and irreparably injure any applicant; mere inconvenience or embarrassment is not enough.). But, see, *Hubert v. Harte–Hanks Texas Newspapers, Inc.* (Tex.App. 1983), 652 S.W.2d 546, 551 ("We do not regard the candidates' names to be facts of a highly embarrassing or intimate nature, which, if publicized, would be highly objectionable to a reasonable person.").

This privacy exemption is of such importance that it certainly is worthy of consideration by Ohio's General Assembly. Disclosing the candidates' identities could possibly adversely affect the candidates' attempts to obtain future employment, their abilities to function in the job they currently hold, and their standing in their communities. *School Commt. of Northampton*, 375 Mass at 132, 375 N.E.2d at 1191, fn. 5.

In addition to exempting private information, at least one state has determined that the specific interests in maintaining secret the applications of candidates for public employment are so important as to require a specific exemption. 5 Ill.Comp.Stat.Ann. 140/7(1)(b)(ii) (exemption from disclosure for "personnel files and personal information maintained with respect to employees, appointees or elected officials of any public body or *applicants* for those positions * * *." [Emphasis added.] ). In Ohio, there exists neither an exemption for an individual's personal privacy nor an exemption for employment applications. The General Assembly, in its review of the public records statutes, has the power to add a privacy exemption which would allow for the weighing of the individual applicant's privacy interests against the public's right to know.

PFEIFER, J., concurs in the foregoing concurring opinion.

PFEIFER, J., concurring in part and dissenting in part. While I concur with the majority that a writ of mandamus should be granted, I dissent from its award of attorney fees.

Respondent had reasonable grounds to withhold the requested documents because of the uncertainty in the law at the time relator requested them. See *State ex rel. Beacon Journal Publishing Co. v. Ohio Dept. of Health* (1990), 51 Ohio St.3d 1, 4, 553 N.E.2d 1345, 1347.

I also note that if this case had involved applicants who had been assured that their applications would be kept confidential, a different issue would have been before this court.

MOYER, C.J., concurs in the foregoing opinion.