The STATE ex rel. CLEVELAND POLICE PATROLMEN'S ASSOCIATION

v.

CITY OF CLEVELAND et al.

[Cite as *State ex rel. Cleveland Police Patrolmen's Assn.*
*v. Cleveland* (1997), 122 Ohio App.3d 696.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71346.

Decided Aug. 28, 1997.

---

*Marshall & D'Angelo* and *Patrick A. D'Angelo,* for relator.

*Sharon Sobol Jordan,* Director of Law, and *Steven J. Terry,* Chief Counsel, for respondents Cleveland and Rocco M. Pollutro.

PATRICIA ANN BLACKMON, Judge.

Relator is an employee organization with members among the sworn, classified personnel of the Cleveland Division of Police. Relator requested that respondents city and chief of police make available the "Strike Plan" and related records prepared in connection with the possible strike by teachers employed by the Cleveland Board of Education ("school board"). After respondents refused to release these records, relator commenced this action in mandamus pursuant to R.C. 149.43. Relator requests that this court compel respondents to release the disputed records.

By entry dated November 19, 1996, this court granted relator's application for alternative writ and ordered that respondents submit disputed records under seal. We also established a briefing schedule. Having reviewed the briefs of the parties and the records submitted under seal, we deny relator's request for a writ of mandamus compelling respondents to make the disputed records available to relator.

"Public record" is defined in R.C. 149.43(A)(1) as "any record that is kept by any public office, including * * * city * * * units, except * * * confidential law enforcement investigatory records * * * and records the release of which is prohibited by state or federal law." R.C. 149.43(A)(2) provides:

" 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

" * * *

"(c) Specific confidential investigatory techniques or procedures * * *;

"(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source."

The primary argument asserted by respondents is that the disputed records contain "specific confidential investigatory techniques or procedures." Additionally, respondents contend that the records contain information the release of which "could endanger the life or physical safety of law enforcement personnel and others," as well as material the release of which is prohibited by state law because it is protected by the attorney-client privilege.

Attached to the brief of respondents is the affidavit of Ronald R. James, Sr., Deputy Chief for Special Operations of the Division of Police, who states:

"4. To the Affiant's knowledge the strike plan and the related documents contain all specific procedures, plans and techniques necessary to accomplish the mission and goal of the Division of Police in the event of a labor strike with Cleveland Public Schools.

"5. To the Affiant's knowledge, the mission and goal of the Cleveland Police in the event of a labor strike with Cleveland Public Schools, is the [sic] prevent criminal activity and maintain public order and safety. To the Affiant's knowledge, information and belief, the ability of the Respondent, the Cleveland Division [sic] Police to accomplish its' [sic] mission and goals will be severely harmed unless this Court denies the relief requested by the Relator C.P.P.A."

Relator has not presented any evidence to the contrary.

■ Respondents state in their brief that the "Strike Plan" is a police contingency plan which is intended to prevent crime as well as maintain public order and safety. Respondents also assert that these records contain "the specific techniques, procedures and other information that the police utilize to prevent crime and maintain public order and safety." Respondents' Brief, at 4. Respondents contend, therefore, that the "Strike Plan" and related records are "specific confidential investigatory techniques or procedures" which are exempt from disclosure under R.C. 149.43(A)(2)(c).

Respondents acknowledge that the issue of whether the disputed records contain "specific confidential investigatory techniques or procedures" is a matter of first impression. As a consequence, we must utilize the established analytical framework for public records cases.

R.C. 149.43(B) requires that public records be made available for inspection and copying. If, however, a governmental unit refuses to make records available, the aggrieved party may challenge that determination.

■ "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 89. Exceptions to disclosure are strictly construed against the custodian of the public records, and the burden to establish an exception is on the

custodian. *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377." *State ex rel. Yant v. Conrad* (1996), 74 Ohio St.3d 681, 682, 660 N.E.2d 1211, 1213.

"Exempting records from release under R.C. 149.43(A)(2) involves a two-step analysis: (1) Is the record a confidential law enforcement record? and (2) Would release of the record create a high probability of disclosure of any of the four types of information specified in R.C. 149.43(A)(2)? [*State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377]." *Yant, supra* at 684, 660 N.E.2d at 1214.

Relator's response to respondents' position focuses on the second step of the analysis. That is, relator argues that the plain language of R.C. 149.43(A)(2)(c) requires that records exempt from disclosure under the "specific confidential investigatory techniques or procedures" exception must pertain to an "investigation." Implicit in relator's position is the assumption that the meaning of the word "investigation" does not include planning for future events. This assumption is not well founded.

R.C. 1.42 provides:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

"Investigatory" is not defined in the Revised Code. Pursuant to R.C. 1.42, therefore, we must consider the common usage of the word "investigatory."

Webster's Third New International Dictionary (1993) indicates that "investigatory" is synonymous with "investigative." *Id.* at 1189–1190. "Investigative" is defined as "of or relating to an investigation." *Id.* at 1189. The definition of "investigation" includes: "1: the action or process of investigating: detailed examination: STUDY, RESEARCH * * *. 2: a searching inquiry: EXAMINATION, SURVEY." *Id.* (Synonyms capitalized in original.) The definition of "study" includes "a careful examination or analysis of a phenomenon, development, or question usu. within a limited area of investigation." *Id.* at 2268.

Obviously, none of these definitions is limited to consideration of events which have already occurred. Furthermore, the definition of "study" as "a careful examination or analysis * * * of a question" clearly indicates that a "study" or "investigation" may involve preparation for circumstances which have yet to occur. For example, the phrase "investigate the possibility of" is commonplace. We hold, therefore, that records pertaining to a police contingency plan that is intended to prevent crime as well as maintain public order and safety are

exempt from disclosure as "specific confidential investigatory techniques or procedures" under R.C. 149.43(A)(2)(c).

We have reviewed the records submitted under seal by respondents. All of these records are—in their entirety—exempt from disclosure as "specific confidential investigatory techniques or procedures" under R.C. 149.43(A)(2)(c).

■ Relator also opposes respondents' contention that these records are exempt from release under R.C. 149.43(A)(2)(d) as "[i]nformation that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source." In support of its position, relator cites *State ex rel. Jenkins v. Cleveland* (1992), 82 Ohio App.3d 770, 613 N.E.2d 652. In *Jenkins*, the city of Cleveland asserted that the names, addresses, and telephone numbers of the victim's relatives fell within the public safety exception in R.C. 149.43(A)(2)(d).

The circumstances in this case are distinguishable from *Jenkins*. If the disputed records were made available, any person could have prior knowledge of the deployment of law enforcement personnel at a time of potential civic unrest. This is precisely the kind of "[i]nformation that would endanger the life or physical safety of law enforcement personnel." As a consequence, the disputed records are exempt from disclosure pursuant to R.C. 149.43(A)(2)(d).

■ Respondents also contend that certain portions of the disputed records are exempt from release pursuant to the attorney-client privilege. Relator requests that this court conduct an *in camera* inspection to determine whether the attorney-client privilege is applicable to these records.

Attached to respondents' brief is the affidavit of an attorney for the school board, in which he avers:

"In the Affiant's capacity as legal counsel to the Cleveland BOE [Board of Education] [he] drafted four documents for the purpose of giving legal advice in the event of a teachers's [*sic*] strike. The four documents are:

"a) A memorandum dated Sept 3, 1996 concerning a meeting between certain City and BOE officials.

"b) A memorandum regarding Labor Dispute Instructions.

"c) The BOE/CPS [Board of Education/Cleveland Public Schools] Strike Activities Calendar.

"d) The BOE/CPS Educational Program for Schools and Staff Personnel to be Utilized." Affidavit of Bradley A. Sherman, paragraph 3 (capitalization in original).

The records submitted under seal are (1) the "Strike Plan" and (2) a memorandum with attachments. Respondents refer to the memorandum as the "CPSS memorandum." As respondents note in their brief, some of the records described in the Sherman affidavit are included in both the "Strike Plan" and "CPSS memorandum."

Given the uncontroverted averments in the Sherman affidavit, these records qualify for the attorney-client privilege. As a consequence, the attorney-client privilege exempts these records from release.

Accordingly, relator's request for relief in mandamus is denied. This court will reseal the records submitted to it. Relator to pay costs.

*Writ denied.*

JAMES D. SWEENEY, C.J., and NAHRA, J., concur.