Robert A. NEINAST, Plaintiff,

v.

**BOARD OF TRUSTEES OF THE COLUMBUS METROPOLITAN LIBRARY, et al., Defendants.**

No. C2–01–443.

United States District Court,
S.D. Ohio,
Eastern Division.

March 27, 2002.

Robert A. Neinast, Pickerington, OH, pro se.

Catherine Adams, Philomena M. Dane, Columbus, OH, for defendants.

## *ORDER AND OPINION*

MARBLEY, District Judge.

This matter is before the Court on cross-motions for summary judgment filed by Defendants on August 2, 2001, and by Plaintiff on September 17, 2001. Oral argument was heard on Friday, February 22, 2002. For the following reasons, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Motion.

### I. STATEMENT OF FACTS

Plaintiff, Robert A. Neinast ("Neinast"), is a resident of Pickerington, Ohio who regularly goes barefoot. Defendant, Board of Trustees of the Columbus Metropolitan Library ("the Board"), is a body that serves as a regulating authority of the Columbus Metropolitan Library ("the Library"). Plaintiff often utilizes the Library. Defendant, Larry D. Black ("Black"), is the Director of the Library and Defendant, Vonzell Johnson ("Johnson"), is the Assistant Manager of Security for the Library.

From 1997 through 2001, Plaintiff was asked to leave the Library on different occasions because he did not comply with the Library's regulation that required wearing shoes while on its premises. On September 12, 1997, Plaintiff was asked for the first time to leave the Library for not wearing shoes. In November 2000, Plaintiff was again informed that he would have to wear shoes in order to use the

Library's facilities. In January 2001, Plaintiff was asked to leave for the same reason. On March 2, 2001, Plaintiff entered the Library barefoot, and was subsequently approached by a security officer and taken to the security desk, where Plaintiff was presented with a one-day eviction from the Library that was approved by Defendants Black and Johnson. The Patron Regulations of the Library do not contain a prohibition on using the Library without shoes. The Library's Eviction Procedure, however, does provide for eviction of patrons not wearing shoes.

After being evicted, Plaintiff wrote letters to Defendant Black and members of the Board, complaining of the enforcement of the Eviction Procedure and its inconsistency with the Patron Regulations. In response, the Board informed Plaintiff that it authorized the procedure, and that Black, as Executive Director, was granted the authority to make decisions, including eviction, in accordance with the Library Organization Policy. Under the Library Organization Policy, the Executive Director has authority in "determining internal policies and procedures [for] ... public relations, relations with the community and governmental agencies, and the handling of all other matters involved with the operation of the library system." In addition, Black asked the Franklin County Prosecutor's Office to determine the legality of the Library's shoe regulation. Subsequently, the Prosecutor's office issued an opinion supporting the view that the regulation requiring shoes was constitutional.

Plaintiff sent a follow-up letter to Defendant Black and Philip C. Johnston, who became President of the Board in January 2001, and Black responded.

## II. PROCEDURAL HISTORY

On April 3, 2001, Plaintiff, acting *pro se*, filed a Complaint containing three causes of action, alleging violations of 42 U.S.C. § 1983 based on deprivations of his First, Ninth, and Fourteenth Amendment rights under the United States Constitution, and his rights under Article I of the Ohio Constitution. Plaintiff requested declaratory judgment, permanent injunction, and damages from the Franklin County Court of Common Pleas. Defendants removed this matter to this Court on May 11, 2001. Defendants filed an Answer on May 24, 2001, after which Plaintiff filed an Amended Complaint on June 27, 2001. On July 9, 2001, Defendants filed an Answer to the Amended Complaint and filed a Motion for Summary Judgment on August 2, 2001. Plaintiff filed a Motion for Summary Judgment on September 17, 2001.

## III. STANDARD OF REVIEW

In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994). Significantly, "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991) (citing *John v. State of La. (Bd. of Trustees for State Colleges & Univ.),* 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.,* 929 F.2d at 248. Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## IV. ANALYSIS

Plaintiff's Complaint contains three causes of action based on violations of 42 U.S.C. § 1983. Section 1983 reads, in relevant part:

> Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. In order to succeed on a claim for a violation of § 1983, Plaintiff must show that (1) a person (2) acting under color of law (3) deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir.2001).

### A. Plaintiff's First Cause of Action

Plaintiff's first cause of action alleges violations of § 1983 based on deprivations of his freedom of speech under the First and Fourteenth Amendments.

#### a. Plaintiff's Time, Place, and Manner Claim

■ Plaintiff argues that the Library is a public forum and that its regulations must be analyzed under strict scrutiny, because he has a right of access to speech in the Library. Plaintiff asserts that the Library's Eviction Procedure does not protect the safety or welfare of the general public, but instead attempts to protect the Plaintiff from himself. Neinast claims that being barefoot has not and will not harm any other Library patrons. Furthermore, the injuries that a barefoot person would likely sustain would also occur to one who was wearing shoes. In fact, Plaintiff argues that barefoot persons would be more likely to anticipate certain dangers, such as a wet floor. Neinast further contends that, because the likelihood of a barefoot injury is so small, the Eviction Procedure is excessive and does not leave open ample alternative channels of protected communication.

Assuming, *arguendo*, that walking barefoot constitutes speech and Plaintiff has a right of access to speech, the Court finds that the Library's shoe requirement passes constitutional muster. First, a public library clearly is a limited public forum. *See, e.g., Kreimer v. Bureau of*

*Police*, 958 F.2d 1242, 1257 (3rd Cir.1992).[1] As a limited public forum, "the Library is obligated to permit the public to exercise rights that are consistent with the nature of the Library and consistent with the government's intent in designating the Library as a public forum," but "[o]ther activities need not be tolerated." *Id.* at 1262. Indeed, a library need not be open "for the exercise of all First Amendment activities merely because [it is open] for the exercise of certain specified First Amendment activities." *Id.* at 1262 n. 21. In a limited public forum, "[r]easonable time, place and manner regulations are permissible...." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Content-neutral "time, place, or manner regulations that limit permitted First Amendment activities within a designated public forum are constitutional only if they are 'narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels of information.'" *Kreimer*, 958 F.2d at 1262 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). And "the requirement of narrow tailoring is satisfied 'so long as ... the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)); *see also Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 189, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997) (subject to intermediate scrutiny, a "content-neutral regulation will be sustained under the First Amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests").

■ In this case, to the extent that it limits Plaintiff's right of access to speech, the Library's shoe regulation satisfies this intermediate scrutiny. The shoe requirement is a valid, content-neutral regulation that promotes communication of the written word in a safe and sanitary condition. As evidenced by various incident reports, the Library's floor sometimes contains feces, semen, blood, and broken glass, all of which pose a significant danger to barefoot individuals. The Library determined that a blanket prohibition on walking barefoot was a reasonable means of minimizing these dangers. Health and safety concerns are, of course, substantial government interests. *See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("Throughout our history the several states have exercised their police powers to protect the health and safety of their citizens."). Here, the safety of patrons would be achieved less effectively absent the Library's regulation. The regulation also leaves open other channels of communication, as Neinast can use the Library so long as he wears shoes, and he may still inform others of his views on the ostensible virtues of being barefoot. Thus, in this limited public forum, the Plaintiff can be restricted in walking barefoot.

### b. Plaintiff's Symbolic Speech Claim

■ Plaintiff argues that going barefoot in public buildings is not illegal under state

---

1. As the Third Circuit stated:

 It is clear to us that a public library, albeit the 'quintessential' locus for the exercise of the right to receive information and ideas, is sufficiently dissimilar to a public park, sidewalk or street that it cannot reasonably be deemed to constitute a traditional public forum. Obviously, a library patron cannot be permitted to engage in most traditional First Amendment activities in the library, such as giving speeches....
 *Kreimer*, 958 F.2d at 1257.

or federal law, and makes much of the fact that he has been admitted to several public places while barefoot. Neinast regularly carries with him letters from the State of Ohio and county health departments confirming that there are no regulations against going barefoot. Not surprisingly, he is often approached by curious onlookers who question his going barefoot. Plaintiff argues that his conduct conveys a message to others and is symbolic speech protected by the First Amendment, which is not disruptive or inconsistent with the stated purpose of the Library.

Plaintiff's argument fails to meet the Supreme Court's standard for symbolic speech. To be sure, "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). Courts apply a two-pronged test to determine whether conduct is protected "symbolic speech": (1) whether "an intent to convey a particularized message was present"; and (2) whether "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974).

In the matter *sub judice*, Plaintiff's going barefoot does not "convey a particularized message," and is conduct that may be regulated. Courts have found that the first prong of the *Spence* test is satisfied through specific political, ideological, or religious messages. *See, e.g., Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing black arm bands to protest the Vietnam War was symbolic speech); *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105

L.Ed.2d 342 (1989) (burning an American flag while chanting, "red, white, and blue, we spit on you," at the Republican National Convention to protest the policies of the Reagan administration was expressive conduct). *But see Stanglin*, 490 U.S. 19 at 24–25, 109 S.Ct. 1591 (individuals meeting for recreational dancing are not taking positions on public questions and are not engaged in particularized expression). Plaintiff's going barefoot, like the plaintiff's acts in *Stanglin*, does not indicate an intent to convey a particularized message.

Plaintiff fails to meet the *Spence* standard's second element because his conduct occurred in a library rather than a political setting, and there is not a great likelihood that other Library patrons will understand his purported message. The *Spence* Court noted that the factual context and environment in which the message is viewed has a strong influence on the clarity or understanding of the message. *Spence*, 418 U.S. at 409–410, 94 S.Ct. 2727. In this case, absent the letters from federal and state agencies that Plaintiff carries with him, many patrons may be confused when seeing Plaintiff barefoot, given the Library's nonpolitical environment. Furthermore, Plaintiff's message does not bear on a matter of public concern. A particular expression addresses a matter of public concern where it can be fairly considered as "relating to any matter of political, social, or other concern to the community...." *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

The Sixth Circuit has held that speech does not touch on a matter of public concern where its aim is to air or remedy grievances of a purely personal nature. *Valot v. Southeast Local School District Board of Education*, 107 F.3d 1220, 1226 (6th Cir.1997) (ruling that a school district's refusal to rehire part time bus drivers who had received unemployment com-

pensation was not unconstitutional because the drivers' request for unemployment compensation during the summer was more a matter of private interest than public concern, and thus unprotected by the right to petition for redress of grievances). Plaintiff's intent to inform others about the benefits of being barefoot is a personal goal that bears little relation to a political, religious, or ideological issue of public concern. He goes barefoot, in part, to inform others that he does not approve of wearing shoes, because he believes that it is more healthy to go barefoot. But Plaintiff has not indicated that he has challenged shoe requirements at public forums nationally. Instead, he simply carries letters from health agencies allowing him to walk barefoot. His actions have not advocated that every barefoot person in America should be given the same treatment. Neinast has failed to meet the requirements for symbolic speech.

Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment as to Plaintiff's first cause of action.

### B. Plaintiff's Second Cause of Action

 Plaintiff's second cause of action alleges violations of § 1983 based on deprivations of his liberty interest under the First, Ninth, and Fourteenth Amendments. Plaintiff argues that the right of personal appearance is a liberty interest protected by the Fourteenth Amendment's Due Process Clause. Plaintiff contends that courts have applied a rational basis review to personal appearance regulations only when they pertain to government employees and that, since he is a private citizen, the Court should employ a more exacting strict scrutiny analysis. But even

under rational basis review, Neinast claims that there is no rational link between the Eviction Procedure and the Library's claimed interest. Finally, Plaintiff maintains that even if there is no fundamental right to personal appearance, courts have recognized a liberty interest that the Library's shoe regulation infringes.

The Court finds that Plaintiff's second cause of action fails. The right of personal appearance is not clearly articulated as a fundamental or protected right within the Constitution, and the Supreme Court has not recognized it as a substantive constitutional right. *Kelley v. Johnson,* 425 U.S. 238, 244, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). Instead, the *Kelley* Court only assumed that such a liberty interest may be cognizable, but this right alone does not warrant the same strict scrutiny analysis given other fundamental rights such as those of speech, religion, and privacy.

Various courts have upheld public forum regulations pertaining to personal appearance. The Sixth Circuit, for instance, held that a policy regulating hair length at public schools did not violate the First, Fourth, Fifth, Ninth, or Fourteenth Amendment, and should be upheld if there is a "real and reasonable" connection to the public forum's operations and purpose. *See Jackson v. Dorrier,* 424 F.2d 213, 218 (6th Cir.1970). And the Third Circuit upheld a library policy that prohibited barefoot patrons as well as those with offensive bodily hygiene from using the library facilities.[2] *Kreimer,* 958 F.2d 1242. Thus, as a limited public forum, the Library has the right to limit the personal appearance of its patrons based on a legitimate government objective.

---

**2.** The regulation upheld in *Kreimer* stated: "Patrons shall not be permitted to enter the building without a shirt or other covering of their upper bodies or without shoes or other footwear. Patrons whose bodily hygiene is so offensive so as to constitute a nuisance to other persons shall be required to leave the building...." *Kreimer,* 958 F.2d at 1248.

Because freedom of appearance is not a fundamental right, restrictions on it should be reviewed on a rational basis. Under such scrutiny, the court will not overturn the Library's regulation unless it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the Library's policy was irrational. *See Kimel v. Florida Bd. Of Regents,* 528 U.S. 62, 84, 120 S.Ct. 631, 145 L.Ed.2d 522. In this case, the Library's safety interests are reasonably connected to the shoe requirement and, thus, satisfy rational basis review. As a limited public forum, the Library need not allow all modes of speech simply because it promotes some modes of speech. Although Plaintiff may be able to enter other public forums, he is not guaranteed the same access at the Library if he chooses to ignore its shoe requirement.

The Court, therefore, **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment as to Plaintiff's second cause of action.

## C. Plaintiff's Third Cause of Action

Plaintiff's third cause of action alleges violations of § 1983 based on deprivations of his substantive and procedural due process and equal protection rights under the Fourteenth Amendment, and Article I of the Ohio Constitution.

### a. Plaintiff's Due Process Claim

■ Plaintiff argues that the Library's policies were not administered properly by Defendants Black and Johnson, and that he was denied procedural due process. Neinast contends that there is no mention of a shoe requirement in the Patron Regulations or in any state statute, and that the Board is not able to issue such a legislative regulation, as it should have been delegated by a health department. Plaintiff argues that the Board has no health and safety expertise and is only experienced in operating a Library. Plaintiff claims that

even if the Board did have the authority to regulate barefoot patrons, it has not done so properly through the Patron Regulations. Neinast argues that the shoe policy was created to establish a dress code rather than to safeguard the health and safety of patrons. Plaintiff asserts that Black did not comply with the Eviction Procedure when he evicted Plaintiff, as there is no language in the Eviction Procedure providing for a one-day eviction. Finally, Neinast claims that he has been deprived of his property interest in using the Library, and that he has no adequate remedy at law.

The Court finds Plaintiff's procedural due process claim meritless. There is no dispute that Defendants Black and Johnson acted under color of state law when they evicted Plaintiff. The issue is whether their conduct has deprived Plaintiff of his constitutional due process rights. The Supreme Court has held that no procedural due process right exists in the generalized rulemaking process of political subdivisions or agencies. *See United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, 244–46, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973) (contrasting due process rights in individual administrative adjudication with the absence of such rights in administrative rulemaking). The Library in this case is similar to a political subdivision or agency, as the Ohio state legislature established free public libraries in the counties and appointed the Defendant Board of Trustees. Plaintiff's procedural due process rights have not been violated, because the shoe requirement is of general applicability.

■ Plaintiff's remaining procedural argument is that the Board exceeded its statutory authority under O.R.C. § 3375.40, which is its authorizing statute. But this is a question of state law, and mere allegations of state law are not sufficient to state a claim under § 1983. *See*

*Huron Valley Hosp. Inc. v. Pontiac,* 887 F.2d 710, 714 (6th Cir.1989) (section 1983 "does not cover official conduct that allegedly violates state law"). As Neinast's procedural due process arguments are based not on a constitutional right but on state statutory interpretation, they fail to state a claim upon which relief can be granted under § 1983.

■ Neinast has also failed to demonstrate that he was deprived of any substantive due process rights as a result of his eviction. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental'.... It protects those interests ... implicit in the concept of ordered liberty ... like personal matters of marriage and family." *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.1990) (citations omitted). This case implicates no such fundamental interest.

As officers of the Library, Black and Johnson had the authority to interpret the Library's policies in a manner that would maintain efficient daily operations. The Eviction Procedure was used to promote legitimate interests such as the safety of all library patrons and the fiscal integrity of the Library in preventing possible lawsuits. Defendants did not abuse their authority when evicting Plaintiff.

### b. Plaintiff's Equal Protection Claim

Plaintiff argues that the shoe regulation violates his equal protection rights because it favors one mode of footwear over the other, and violates the rights of a whole class of citizens, the Society for Barefoot Living, of which he is a member.

■ The Court finds that Defendants have not violated Plaintiff's equal protection rights. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted). To prevail on an Equal Protection claim, Plaintiff must show that the Library discriminated against him because of membership in a protected class. *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332 (6th Cir.1990). Neinast claims that he is a member of a suspect class consisting of people who choose to go barefoot. Yet, such a class of protected individuals has never been recognized in the courts. Even if it were recognized, shoe regulations would only necessitate rational basis scrutiny, as heightened scrutiny is reserved for classifications made on the basis of race, gender, alienage, and national origin. *See Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249. To withstand such review, the Library's policy must be rationally related to a legitimate purpose. *Id.* at 446, 105 S.Ct. 3249. As the Library's regulation is rationally related to legitimate public safety concerns, Plaintiff has failed to state a valid Equal Protection claim.

Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment as to Plaintiff's third cause of action.

### D. Defendants' Qualified Immunity Defense

■ Defendants Black and Johnson argue that they are entitled to qualified immunity. As public employees in a limited public forum, Black and Johnson claim that they were not put on notice by any clearly established law that their treatment of Neinast was unlawful. Defendants also cite an advisory opinion of the Franklin County Prosecutor's Office indicating that their actions were completely lawful.

The Court agrees and finds that Defendants Black and Johnson are shielded from any liability in this case. The affirmative defense of qualified, or good faith, immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citation omitted). Thus, an official may be held personally liable for civil damages for unlawful official action if that action was not objectively reasonable "in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted). This objective legal reasonableness standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his or her conduct was lawful, judged from the perspective of the reasonable official on the scene. *See Anderson,* 483 U.S. at 640–41, 107 S.Ct. 3034.

To survive a motion for summary judgment in this context, Plaintiff must allege specific facts demonstrating that "a clearly established" right has been violated. Neinast has failed to do so. None of Plaintiff's allegations regarding supposed deprivations of his First, Ninth, and Fourteenth Amendment rights have held up to scrutiny. Thus, Defendants Black and Johnson are entitled to qualified immunity from Plaintiff's claims.

The Court, therefore, **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment as to Defendants' claim of qualified immunity.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety and **DENIES** Plaintiff's Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**