**THE CINCINNATI ENQUIRER, A Division of Gannett Satellite Information Network, Inc., Plaintiff,**

v.

**CINCINNATI BOARD OF EDUCATION, et al., Defendants.**

No. C–1–02–775.

United States District Court, S.D. Ohio, Western Division.

Feb. 11, 2003.

John Anthony Flanagan, John Charles Greiner, Graydon Head & Ritchey, Cincinnati, OH, for plaintiff.

Mark Joseph Stepaniak, Kerry Philip Hastings, Taft Stettinius & Hollister, Cincinnati, OH, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (doc. 5), Plaintiff's Memorandum in Opposition (doc. 6), Defendants' Reply (doc. 7), Plaintiff's Motion to Submit Additional Authority (doc. 8), and Defendants' Response (doc. 9).

## I. Background

This is a 42 U.S.C. § 1983 case in which Plaintiff, the Cincinnati Enquirer (hereinafter, "Enquirer"), alleges that Defendant Cincinnati School Board (hereinafter "Board") violated its constitutional rights when the Board refused to produce the resumes and other information pertaining to candidates for the position of Superintendent for the Cincinnati Public Schools and took steps to conceal such information (doc. 6). According to Plaintiff, Defendants conspired by using fictitious names and numbers on documents to conceal the identity of the candidates, by reimbursing candidates by cash rather than by check to avoid creating public documents, and by returning the candidates' resumes to the candidates, thus not retaining records (doc. 5). The Enquirer's October 24, 2002 Complaint alleges that Defendants violated its rights by 1) interfering with Plaintiff's right to gather news, 2) interfering with Plaintiff's right of access to public information regarding the functioning of government, and 3) by retaliating against the Enquirer for attempting to exercise such rights (doc. 1). Plaintiff seeks an order directing Defendants to refrain from further depriving it from its rights under the First Amendment, Ohio statutory law, and the common law; awards of costs, attorneys fees, and compensatory and punitive damages; and all other equitable relief to which it may be entitled (*Id.*).

On November 13, 2002, Defendants filed their Motion to Dismiss for Failure to State a Claim arguing that Plaintiff's Complaint fails to state a Section 1983 claim, and in the alternative, that the individual Defendants are entitled to qualified immunity (doc. 5). Defendants further argue that the Court should dismiss the Complaint's equitable claim based on abstention (*Id.*).

## II. The Fed.R.Civ.P. 12(b)(6) Standard

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a), which states that, a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court examines a complaint in light of the objectives of Rule 8 using the standard articu-

lated in *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir.1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Jones*, 827 F.2d at 1103.

The admonishment to liberally construe the plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting *In Re: Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); Wright, & Miller, Federal Practice and Procedure: § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988).

## III. Discussion

■ Defendants' Motion argues first that Plaintiff's Complaint should be dismissed for attempting to allege Ohio statutory and common law claims under Section 1983 (doc. 5). Defendants posit under *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) and *Huron Valley Hospital, Inc. v. City of Pontiac*, 887 F.2d 710 (6th Cir.1989) that Section 1983 is limited to official violations of federal law and constitutional rights, and that remedies for state law violations must be sought in state court (*Id.*). Plaintiff responds that it has indeed alleged a violation of the First Amendment, citing authority for the proposition that it has a right to gather news, and a right of access to public information regarding the functioning of government (doc. 6). As the Court finds well-taken Defendants' argument that state law claims cannot serve as the basis for a Section 1983 Complaint, *Neinast v. Bd. of Trustees of the Columbus Metropolitan Library*, 190 F.Supp.2d 1040, 1047–48 (S.D.Ohio 2002) (following *Huron Valley*, Section 1983 "does not cover official conduct that allegedly violates state law."), the Court will analyze Plaintiff's position, that stripped of state law claims, there remains a First Amendment basis to its Complaint.

### A. The Right to Gather News and to Access Public Information

Plaintiff argues that under the First Amendment there is a right for the press to gather news and to access government

information (doc. 6). Defendant argues that the First Amendment is not a public records act, that the right to gather information, under *Zemel v. Rusk,* 381 U.S. 1, 16–17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) is not unrestrained, and that the Sixth Circuit has never recognized a First Amendment right to access outside of judicial or quasi-judicial proceedings (doc. 7).

### 1. The Right to Gather News

■ Plaintiff cites *CBS, Inc. v. Young,* 522 F.2d 234, 237–38 (6th Cir.1975), a case in which the Sixth Circuit ordered the District Court for the Northern District of Ohio to vacate an order barring parties and others associated with a lawsuit arising out of the Kent State shootings from speaking with the news media and the public. (doc. 6). Defendant points out, and the Court agrees, that in analyzing whether CBS, Inc. had standing to contest the order's validity, the Sixth Circuit stated that news gathering qualifies for First Amendment protection (doc. 7). The *CBS* Court, however, did not hold that a right to gather news includes the right to access government information. The *CBS* case, unlike the present case, involved a prohibition keeping certain people from speaking to the press. 522 F.2d 234. In the case at bar, the Defendant has not been alleged to have prohibited anyone who wished to talk to the Enquirer from doing so. As a matter of law, therefore, the Court finds no indication that Plaintiff's right to gather news was violated.

### 2. The Right to Access Government Information

Plaintiff cites *Detroit Free Press v. John Ashcroft,* 303 F.3d 681, 700 (6th Cir.2002) for the proposition that there is a limited constitutional right to some government information (doc. 6) and argues that the Court should use, as the Sixth Circuit did in *Detroit Free Press,* the "experience and logic" analysis from *Richmond Newspa-*

*pers v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In contrast, Defendants argue that the applicable standard to apply in this case comes from *Houchins v. KQED, Inc.,* 438 U.S. 1, 14, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), in which the Supreme Court stated that the First Amendment is not a public records act and does not create a right of access to government information or sources of information. In his concurrence in *Houchins,* Justice Stewart stated that:

> The First and the Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access superior to that of the public generally. The Constitution does no more than assure the public and the press equal access once government has opened its doors.

438 U.S. at 16, 98 S.Ct. 2588. Defendants further cite *Pell v. Procunier,* 417 U.S. 817, 834–35, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) in which the Supreme Court stated that the Constitution does not impose "upon government the affirmative duty to make available to journalists sources of information not available to the public generally" (doc. 5). Defendants argue that Plaintiff has no grounds for public access to the resumes and candidate information at issue in this case, because such grounds emanate from state law, which cannot be the basis of a Section 1983 Complaint. As such, Defendants argue, under *Houchins,* Plaintiff cannot make an equal access argument.

The parties do not seem to be on the same page on this point. Defendants argue that state law jurisprudence is completely inapplicable to this Section 1983 case. Defendants apparently argue that because the public was not given access to the documents, the press cannot complain

lack of equal access: both public and press were equally denied access. Defendants argue that if the denial of public access was improper under state law, then Plaintiff is free to seek the state law remedy, but there is no First Amendment violation. In contrast, Plaintiff essentially argues that state law jurisprudence informs the First Amendment analysis, because if the public should have access under state law, then the press should have equal access. Plaintiff argues that this case is not one about gaining a special right of access, as in *Pell* or *Houchins,* but rather equal access to the public, which under state law was allegedly illegally denied.

■ The Court, as noted above, agrees that a state law claim cannot serve as the basis for a Section 1983 Complaint. However, the Court does not find the Defendants' position or *Houchins* analysis persuasive. This case is not about equal or special access but rather about whether under the First Amendment access is required at all. In *Detroit Free Press,* the Sixth Circuit stated that the *Richmond Newspapers* "two-part 'experience and logic' test sufficiently addresses all of the *Houchins* Court's concerns for the implications of a constitutionally mandated general right of access to government information." 303 F.3d 681, 695 (6th Cir.2002). As such, the Court finds that the proper analysis in this case, as cited by Plaintiff, comes from the Sixth Circuit's *Detroit Free Press* decision. Under *Detroit Free Press* the applicable test to determine whether a right of access exists focuses on 1) whether the information sought has historically been open to the press and general public, and 2) whether public access plays a significant positive role in the function of the particular process in question. 303 F.3d 681, 700–01 *citing Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Contrary to Defendants' assertion that the Sixth Circuit has applied *Richmond News-*

*papers* only to adversarial proceedings of a judicial or quasi-judicial nature (doc. 9), the Sixth Circuit has clearly signaled that there is no such categorical distinction, and that "we believe that there is a limited First Amendment right of access to certain aspects of the executive and legislative branches." 303 F.3d at 695.

**A. Whether the Information Sought Has Historically Been Open to the Press and General Public**

■ Plaintiff cites to three Ohio cases interpreting Ohio Rev.Code § 149.43 for the proposition that resumes for candidates for public positions have been historically open to the public, *State ex rel. The Plain Dealer Publishing Company v. City of Cleveland,* 75 Ohio St.3d 31, 661 N.E.2d 187 (1996) (finding in a mandamus action that disclosure of resumes for police chief required under Ohio Rev.Code § 149.43), *The State ex rel. Gannett Satellite Information Network v. Shirey,* 78 Ohio St.3d 400, 678 N.E.2d 557 (1997) (finding in a mandamus action that disclosure of resumes and supporting documentation provided to a private consultant required under Ohio law), and *State ex rel. Consumer News Services, Inc. v. Worthington City Board of Education,* 97 Ohio St.3d 58, 776 N.E.2d 82 (2002) (doc. 6) (resumes of applicants for treasurer of the Board of Education must be disclosed as public records). Plaintiff likewise cites to *El Dia, Inc. v. Hernandez Colon,* 783 F.Supp. 15, 22–23 (D.P.R.1991) for the proposition that the historical basis for access to public records is rooted in "[c]itizens' participation in self-government and the equally important role of assuring that governmental affairs are conducted in the open." (doc. 6).

Defendants respond that none of the three Ohio cases hold that resumes retained by the candidates are open to the public nor require that the government

create certain types of records (doc. 7). Defendants also note that even if the cases were found to be apposite, they are so recent that under *Richmond Newspapers* analysis, it is questionable whether they constitute a historical basis for access to the press and general public (doc. 7). As for the *El Dia* case, Defendants signal that the district court decision cited by Plaintiff was reversed and vacated by the First Circuit. *See* 963 F.2d 488 (1st Cir.1992). The Court notes that such reversal throws this basis for Plaintiff's argument into question.

Plaintiff moved the Court for Leave to Submit Additional Authority (doc. 0). As the Court was able to consider Defendants' critique of Plaintiff's additional authority (doc. 9), Defendants are not prejudiced by Plaintiff's motion, and the Court grants it. In response to Defendants' arguments concerning a dearth of evidence of historical access to candidates' resumes, Plaintiff submitted *Krause v. Rhodes*, 671 F.2d 212 (1982), and *Krickenberger v. Wilson*, 15 Ohio Dec. 779 (1905) as authority supporting the contention of historical public access to public records (doc. 8). The Court finds that neither of these cases deals with the right of public access to resumes or application information of candidates for public employment. As such, *Krause* and *Krickenberger* are inapposite and unhelpful to the Court's *Richmond Newspapers* analysis.

The Court finds Defendants' position on the lack of historical access of the press and public to resumes of candidates for the appointees of a local school board well-taken. Though the Court notes the Ohio Supreme Court's position construing Ohio Rev.Code § 149.43 as reflected in *State ex rel. The Plain Dealer Publishing Company v. City of Cleveland*, 75 Ohio St.3d 31, 661 N.E.2d 187 (1996), *The State ex rel. Gannett Satellite Information Network v. Shirey*, 78 Ohio St.3d 400, 678 N.E.2d 557

(1997), and *State ex rel. Consumer News Services, Inc. v. Worthington City Board of Education*, 97 Ohio St.3d 58, 776 N.E.2d 82 (2002), the Court does not view this recent jurisprudence as apposite with the precise facts of this case. In this case, the Board returned the resumes to the candidates, thus not retaining them as public documents under Ohio law. Though such action may appear unseemly, the practical result is different from *State ex rel. The Plain Dealer, The State ex rel. Gannett,* and *State ex rel. Consumer News Services,* where the government entities retained the resumes. In this case, if ordered to produce documents, the Board would have to create documents. The Court finds no historical basis for ordering a government entity to create public documents where none exist. Furthermore, even if Plaintiff's cases were on point, the Court finds mixed evidence of historical access by the press and public to such information. Apart from the recent jurisprudence, Ohio law has reflected for at least thirty years the proposition that school boards can meet in executive session to consider the hiring of employees in confidence, and their minutes, which are public record, only need to reflect the general points of discussion. *See* Ohio Rev.Code § 121.22.

Furthermore, nearly forty years ago, the Supreme Court stated:

There are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow. For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment right. The right to speak and publish does not carry with it an unrestrained right to gather information.

*Zemel v. Rusk,* 381 U.S. 1, 16–17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). The Court finds a historical basis for confidentiality of the resumes and documents pertaining to the hiring of school board employees. As reflected in *Zemel,* the operation of government, even in a free society, has not historically been completely open based upon First Amendment rights. If the citizens of Cincinnati are disgruntled with the choice of their elected school board members, they can vote to change those members, or further, work to change the manner of selection of the Superintendent.

**B. Whether Public Access Plays a Significant Positive Role in the Function of the Particular Process in Question.**

■ The second prong of *Richmond Newspapers* requires the Court to conduct an objective analysis of the value of public access to resumes to the recruitment and appointment of a Superintendent by the Cincinnati Board of Education. Plaintiff cites to *State ex rel. Plain Dealer Publishing Co.,* in which the Ohio Supreme Court, cited the Alaska Supreme Court in *Kenai v. Kenai Peninsula Newspapers,* 642 P.2d 1316 (1982), for the proposition that disclosure of the names and applications of applicants for public offices permits the public to verify the representations of the applicants and to seek additional information which may be relevant to the selection process (doc. 6).

Defendants respond that requiring them to create and provide the information desired by the Enquirer does not play a significant positive role in the Board's decision-making process (doc. 7). Moreover, Defendants argue, requiring such public access would actually disrupt the recruitment process, as it would have a chilling effect on candidates who desire the privacy to submit their resumes without the awareness of their current employer (*Id.*).

Although the Ohio Supreme Court has rejected similar arguments in construing Ohio Rev.Code 149.43 in *State ex rel. Plain Dealer,* the Court finds the Defendants' argument in the context of this First Amendment case well-taken. The Court finds the Board's desire to protect the confidentiality of the candidates as outweighing the need for public access in the function of the recruitment process. The Board members are elected officials who have been entrusted with hiring a Superintendent and who are capable of both verifying the representations of the applicants and seeking more information as necessary. Confidentiality of at least the initial pool of candidates ensures that the Board will be able to consider the very best candidates—or at the very least, those who already are employed. Allowing public access to resumes of candidates could very reasonably cause many candidates to withhold their applications or even harm unsuccessful candidates who apply. Candidates could very well choose instead to apply to work in the private sector, where the confidentiality of their candidacy would be ensured. These logical outcomes would not play a positive role in the recruitment process.

**CONCLUSION**

■ Having taken all of Plaintiff's facts as true and having conducted a First Amendment analysis of Plaintiff's claims of a right to gather and to access government information, the Court finds that Plaintiff has not pleaded a cognizable Section 1983 claim. Under the *Richmond Newspapers* test, Plaintiff has not demonstrated a historical basis for access of resumes returned to candidates or for forcing a school board to create records. Nor has Plaintiff demonstrated that public access plays a positive role in the recruitment process that outweighs the obvious negative effects. As such, the Court grants Defen-

dants' Motion to Dismiss Plaintiff's Section 1983 Complaint for failure to state a claim. The Court further finds that as there is no First Amendment violation, the individual Board members are entitled to qualified immunity as their conduct violated no clearly established constitutional right. *Johnson v. Estate of Laccheo,* 935 F.2d 109, 111 (6th Cir.1991). Finally, the Court abstains from reaching Plaintiff's state and equitable claims. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

Having reviewed this matter, however, the Court signals to the Board its dismay with the process the Board used to impede access by the press. The Board has at its disposal the machinery of Ohio Revised Code § 121.22, under which it can call executive session to handle recruitment matters in confidentiality. That provision only provides that general minutes of such a session become public record. Although the Court abstains from holding that Section 121.22 would indeed shield the documents in question from disclosure under Ohio law, the Court notes that none of the cases already before the Ohio Supreme Court involved Section 121.22, and that confidential review of such documents in executive session would certainly comply with Ohio law.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss for Failure to State a Claim (doc. 5), GRANTS Plaintiff's Motion for Leave to Submit Additional Authority (doc. 8), and DISMISSES this case with prejudice.

SO ORDERED.